UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASA STEINARSDOTTIR**, a/k/a ASA STEINARS,<br><br>      Plaintiff,<br><br>      v.<br><br>**TRIPSCOUT, INC.**,<br><br>      Defendant. | Case No. 23-CV-1528 (CRC) |

## MEMORANDUM OPINION AND ORDER

Asa Steinars is an Icelandic influencer. And a successful one at that: Over one million Instagram users flock to her account for photographs and videos of her exploring her homeland. Tripscout, Inc., is a D.C. based travel marketing company that controls a network of social media accounts. To promote tourism for Tripscout's clients, these accounts share and repost content made by creators like Steinars.

Steinars and Tripscout would appear to be a good match. Tripscout certainly thought so: Over the course of several years, its accounts repeatedly shared and reposted Steinars's content. Tripscout claims Steinars encouraged this relationship—and that, even if she did not, her public posts were fair game under Instagram's stated policies. But Steinars says Tripscout had no right to use her work. So, after Tripscout refused her request for compensation, she sued the company in this court for copyright infringement. Tripscout responded with counterclaims against Steinars for fraudulent inducement, tortious interference, and unjust enrichment.

Before the Court is Steinars's motion to dismiss Tripscout's counterclaims under Federal Rule of Civil Procedure 12(b)(6). Finding Tripscout's pleadings deficient on all three claims, the Court will grant the motion.

I.  **Background**

The Court draws the following background from the factual allegations in Tripscout's counterclaims, which it must accept as true in evaluating Steinars's motion to dismiss.  <u>Kevin S. Bennett Tr. U/A Dated Aug. 2, 1989 v. Bennett</u> ("<u>Bennett Tr.</u>"), 561 F. Supp. 2d 22, 26 (D.D.C. 2008).  It also considers facts alleged in "documents . . . incorporated in the counterclaim." <u>Shapiro, Lifschitz & Schram, P.C. v. Hazard</u>, 24 F. Supp. 2d 66, 73 (D.D.C. 1998).

A.  <u>Factual Background</u>

Plaintiff Asa Steinars is a content creator.  She makes her living on social media.  Steinars's specialty is photographs and videos of her exploring her native Iceland.  Instagram users can visit her public account, @asasteinars, to see her kayaking among icebergs, zip lining over glaciers, and submerging in hot springs.

Defendant Tripscout, Inc., is a travel company for the digital age.  It describes itself as "an innovative industry partner for travel marketing content that works with destination marketing organizations and tourism boards worldwide to inspire people to travel more."  ECF 38 (Countercls.) ¶ 1.  What this means: Tripscout controls a network of travel-related social media accounts run by independent contractors, who source and promote content from creators, like Steinars.  Tripscout's accounts include the Instagram accounts "@iceland.explore," "@outdoor," and "@spectacular.norway" and the Tik Tok account "@iceland.explore" (collectively, "the Tripscout accounts"). <u>Id.</u> ¶ 2.

Ideally, the relationship between Tripscout and a content creator would be mutually beneficial: From the creator, Tripscout would get content promoting destinations for its clients.  From Tripscout, the creator would gain publicity and, hopefully, followers—the currency of the social-media economy.

Tripscout claims it had such a relationship with Steinars. Beginning in 2017, its accounts shared and reposted her content— with her permission, Tripscout alleges. See id. ¶ 14. It contends Steinars encouraged it to share her works in a series of social media exchanges with accounts that Tripscout purports to control.

To illustrate, it offers screenshots of these conversations. In one, an unidentified person—whom Tripscout now identifies an "associate"—messaged Steinars at 7:54 p.m. on an otherwise undated Tuesday that "[w]e love your content" and wondered whether they could "feature it on our account (of course with full credit and tagging)." Id. ¶ 12. Steinars replied: "Hey yeah go ahead 😊 👋🏻 ❤️." Id. On a different, also undated occasion, an unidentified Instagram user messaged Steinars "Aw love this! Will deff share ❤️," and Steinars gushed "❤️ ❤️ ❤️ ❤️" in response. Id. ¶ 13. Yet another screenshot depicts Steinars "mentioning" an unidentified account in her story. Id. ¶ 14. And several others show Steinars "heart reacting" to reposts of her content—also by unnamed accounts. See id.

By March 2021, however, Tripscout claims Steinars had a change of ❤️. Id. ¶ 19. That's when she contacted the company and accused it of using over 30 of her works without her permission. Id.; see also ECF 26-1 (Third Am. Compl.), at 123 (page numbers designated by CM/ECF) (March 22, 2021, email from Steinars to Tripscout). She asked Tripscout to pay for those works. Third Am. Compl. at 123. Tripscout refused, insisting that it was within its rights to feature her content based on her prior engagement with its accounts and under Instagram's Terms of Use and Privacy Policy. Id. at 124, 130. It also pointed out that Steinars's following had ballooned since Tripscout started reposting her content. Id. at 130. But Steinars retorted that any interactions she had with Tripscout's accounts had been years before and did not serve to grant the company carte blanche to use all her content forever. Id. at 125.

3

B.  Procedural History

In December 2022, Steinars registered one of her videos with the U.S. Copyright Office. Id. ¶ 44. The following May, she filed this suit against Tripscout for one instance of copyright infringement. See ECF 1. As she has registered additional works, she has amended her complaint to add more alleged infringements. The operative third amended complaint alleges 53 infringements of 41 different works. Third Am. Compl. ¶¶ 23–157.

In a previous opinion, the Court denied Tripscout's motion to dismiss Steinars's second amended complaint. ECF 37 at 10. The Court also declined to adopt Tripscout's theory that Instagram's Terms of Use and Privacy Policy granted it a license to repost Steinars's content. Id. at 7–8.

Tripscout subsequently asserted three state-law counterclaims against Steinars for fraudulent inducement, tortious interference, and unjust enrichment. Countercls. ¶¶ 27–56. Steinars has moved to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6). ECF 39 (Mot.) at 1.

The parties are currently in an extended discovery period, which has been marred by repeated disputes and will close on March 17, 2025. See Jan. 30, 2025, Minute Order. Now before the Court is Steinars's motion to dismiss Tripscout's counterclaims.

**II.  Legal Standards**

"To survive a motion to dismiss" under Rule 12(b)(6), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Bennett Tr., 561 F. Supp. 2d at 25–26 (same standard for counterclaims). The Court "must take all the factual allegations in the [counterclaim] as true," though it is "not

4

bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. Analysis

The parties agree that D.C. substantive law applies to Tripscout's counterclaims. See ECF 57 at 1.

### A. Fraudulent Inducement

Tripscout's first counterclaim is for fraudulent inducement. Its theory is that Steinars intentionally gave it the false impression that the company had her consent to use her content because she wanted to have her cake and eat it too: the benefit of more followers from Tripscout's promotion of her posts and the option to later sue Tripscout for copyright infringement. Tripscout claims that, after it relied on Steinars's "false" consent in posting her content, and she grew in prominence, Steinars hit it with a copyright lawsuit. See Countercls. ¶¶ 27–43.

The Court will grant Steinars's motion to dismiss Tripscout's fraudulent inducement counterclaim because the company has failed to adequately plead it. "To prove fraudulent inducement, a party must demonstrate '(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages.'" Africare, Inc. v. Xerox Complete Document Sols. Md., LLC, 436 F. Supp. 3d 17, 38 (D.D.C. 2020) (omission in original). "The elements of fraud and fraudulent inducement are the same." In re U.S. Off. Prods. Co. Sec. Litig., 251 F. Supp. 2d 77, 100 (D.D.C. 2003). Both must be pled with particularity. See Atraqchi v. GUMC Unified Billing Servs., 788 A.2d 559, 563 (D.C.

2022); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

D.C. law does not require a person suing for fraud to have been lied to directly. Boomer Dev., LLC v. Nat'l Ass'n of Home Builders, 325 F.R.D. 6, 14 (D.D.C. 2018). Instead, a plaintiff can sue a defendant for his "material misrepresentations" even if the plaintiff did not "personally hear" them, so long as the plaintiff "falls within an identifiable class of persons that the defendant intended to influence." Id.

Multiple problems with Tripscout's fraudulent inducement counterclaim warrant dismissal. First, Tripscout has not pled this claim with particularity. The crux of its fraudulent inducement claim is the "Hey yeah go ahead 😊 👋🏻 ❤️" message. But its pleadings do not indicate the time and date of this interaction. Nor do they "identif[y] [the] individuals allegedly involved"—most notably, the owner of the account with which Steinars corresponded and the Tripscout "associate" who may have written the messages. Aston v. Johnson & Johnson, 248 F. Supp. 3d 43, 49 (D.D.C. 2017) (citations omitted). In fact, Tripscout has not identified *any* of the accounts or people that allegedly engaged with Steinars on social media.

Turning next to specific elements, Tripscout has not pled the first—"a false representation." Steinars's "secret[]" intentions do not bear on the truth of whether she consented to Tripscout using her content. Countercls. ¶ 31. Instead, whether she gave the company consent is an objective fact; she either told Tripscout it could use her content, or she did not. Cf. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973) ("[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."). If, as Tripscout alleges, she unambiguously told the company it could, then it is not "erroneous" to say that it had

her permission to do so. See False, Oxford English Dictionary Online, https://www.oed.com/dictionary/false_adj?tab=meaning_and_use#4704982 (defining false as "[e]rroneous, wrong").

Tripscout's claim also fails the fourth element: that Steinars had the intent to deceive Tripscout. As noted, Tripscout's counterclaim does not identify the account(s) with which Steinars communicated. Nor does it allege that Steinars knew she was interacting with accounts operated by Tripscout. Therefore, Tripscout has not pled facts to support a finding that Steinars "intended to influence" Tripscout into relying on her alleged "false" consent. Boomer Dev., LLC, 325 F.R.D. at 14. Steinars may have intended to induce some unidentified person who in fact was a Tripscout associate into posting her content—but Tripscout has not alleged or otherwise created an inference through the Instagram screenshots included in its counterclaim that Steinars knew that this associate was connected to Tripscout.

Because Tripscout has not pled with particularity and its pleadings are deficient on the first and fourth elements, the Court will dismiss its fraudulent inducement counterclaim.[1]

---

[1] Tripscout's fraudulent inducement counterclaim includes some inconsistent facts. Tripscout denies that it posts content on its social media accounts—claiming that independent contractors operate the accounts instead—yet suggests that it posted Steinars's content in reliance on her consent. Compare ECF 38 (Answer) ¶ 3 ("[Tripscout] admits that it is the registered user of various social media accounts, which are operated by independent contractors" but "denies . . . that [it] posted Plaintiff's works on those accounts."), and Countercls. ¶ 3 ("Tripscout does not post content on the Social Media Accounts."), with Countercls. ¶ 38 ("Tripscout and its network of independent contractors relied on [Steinars's] false representations in re-sharing and posting her content."). But this inconsistency alone does not warrant dismissal at this stage, as Steinars argues. See Powers-Bunce v. District of Columbia, 479 F. Supp. 2d 146, 163 (D.D.C. 2007) (concluding that, given Fed. R. Civ. P. 8(e), "inconsistency" between factual allegations in the complaint did not "mandate dismissal under Rule 12(b)(6)" when the complaint was viewed in its entirety and in the light most favorable to the plaintiff). Regardless, Tripscout's fraudulent inducement counterclaim fails for the other reasons discussed above.

B. Tortious Interference

Next, Tripscout alleges that Steinars tortiously interfered with the company's contractual relationship with Instagram, pursuant to which Tripscout claims it had the right to use Steinars's publicly posted content. Tripscout has failed to make out a tortious interference claim.

The elements of tortious interference in the District of Columbia are "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." Precision Contracting Sols., LP v. ANGI Homeservices, Inc., 415 F. Supp. 3d 113, 121–22 (D.D.C. 2019).

Tripscout has not pled the existence of a valid business relationship or expectancy. It bases its claim on an alleged contract it has with Instagram arising from Instagram's Terms of Use and Privacy Policy. Specifically, Instagram's Terms of Use grant Instagram a "transferable" and "sub-licensable" license to a user's publicly posted content. Countercls. ¶ 24. Instagram's Privacy Policy grants "people using [its] Products" the ability to "send public content . . . to anyone on, across or off our Products." Id. ¶ 25. Tripscout's theory is that, when read with the Terms of Use, this provision in the Privacy Policy grants all Instagram users a blanket sublicense to all public content. But the Court previously concluded that "Instagram's policies, standing alone, did not unambiguously grant Tripscout the right to share Steinars' copyrighted works on its own page"—in other words, Instagram's policies were not enough to grant Tripscout a blanket sublicense. ECF 37 at 8. It declines to revisit that holding now.

The Privacy Policy grants Instagram users the ability to "send public content." But, without explanation, Tripscout expands this language to encompass the right to "use" public content. Compare Countercls. ¶ 35 (quoting Privacy Policy's language providing that "We, you

8

and people using our Products can *send* public content . . . to anyone on, across or off our Products" (emphasis added)), with id. ¶ 36 ("When Counter-Defendant voluntarily posted her 'public' content for *use* 'on, across or off' the Instagram platform, she made a representation to the public that her content could be *used* 'on, across or off' the Instagram platform." (emphases added)). The right to "send" fits with Instagram's design, which enables users to share public posts on Instagram, via its built-in tools of direct messages or stories, or off Instagram, via link. But that is not what Tripscout purportedly did here; rather, Steinars alleges that Tripscout copied her content and reposted it on its own Instagram and TikTok accounts. Third. Am. Compl. ¶¶ 23–157.

There is a key difference between these two ways of sharing content. When a user shares public posts via direct messages, stories, or links, she shares the original post by the creator from the creator's account. By contrast, when a user copies and reposts a creator's content, she creates a new post on her own account. So, even if she credits and tags the original creator, her new post may substitute for the original post in the market for content. Cf. Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 145 (2d Cir. 1998) (in fair-use context, explaining that one "concern is . . . whether the secondary use usurps or substitutes for the market of the original work"). The Court thus suspects that Instagram would have been clear if it wanted to grant all users the right to copy any public post. But it used the more limited language of "send" instead. Consequently, Instagram's policies do not explicitly grant Tripscout a sublicense to "use" Steinars's publicly posted content any way it sees fit. And because Tripscout has not pled an alternative source of its contractual relationship with Instagram, it has failed to plead a valid business relationship.

But even assuming Instagram granted Tripscout a sublicense to use Steinars's public content, Tripscout has not pled tortious interference for another reason: It has not alleged that Steinars caused the company to breach or otherwise fail to perform its obligations under its contract with Instagram. Tripscout asserts it failed to perform because it took down Steinars's content in response to her lawsuit even though it had the right to post that content under Instagram's Terms of Use and Privacy Policy. But nothing in Instagram's policies *requires* users to use or even to send others' public content. Tripscout posits, without citation, that it failed to perform its contract with Instagram because it was not able to take full advantage of it. ECF 40 (Opp.) at 14. But it provides no support for the proposition, and the Court is not aware of any, that a party who does not take full advantage of a contract somehow breaches that contract. That theory would open the door to limitless breach-of-contract liability.

Accordingly, because Tripscout's proposed contract interpretation fails as a matter of law, and Tripscout also has not pled breach, the Court will dismiss Tripscout's tortious interference claim.

C. Unjust Enrichment

Tripscout's final counterclaim is for unjust enrichment. Unjust enrichment occurs "when a person retains a benefit (usually money) which in justice and equity belongs to another." Glasgow v. Camanne Mgmt. Inc., 261 A.3d 208, 215 (D.C. 2021) (quoting Falconi-Sachs v. LPF Senate Square, LLC, 142 A.3d 550, 556 (D.C. 2016)). The elements are "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Bregman v. Perles, 747 F.3d 873, 876 (D.C. Cir. 2014) (quoting Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp., 944 A.2d 1055, 1076 (D.C. 2008)). Equity demands liability in such cases "to reverse the

effects of a voluntary transaction that unfairly enriched one party at the expense of the other." Salem Media Grp., Inc. v. Awan, 301 A.3d 633, 659 (D.C. 2023).  Indeed, "the receipt of a benefit *at the expense of the claimant* is a *necessary . . . condition* of liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt.a (2011) (emphases added). So, for example, "a standard pattern of unjust enrichment recovery" is the "[m]istaken payment of money not due."  In re APA Assessment Fee Litig., 766 F.3d 39, 46–47 (D.C. Cir. 2014) (alteration in original) (quoting id. § 6 cmt.c).

      Here, Tripscout alleges that it conferred a benefit on Steinars:  She gained followers and prominence because it shared and reposted her content on its social media accounts.  And Tripscout asserts it is unjust for Steinars to retain these benefits while suing Tripscout for copyright infringement.  See Countercls. ¶¶ 52–56.  But these allegations do not state a claim for unjust enrichment because nowhere has Tripscout pled that Steinars was unjustly enriched *at its expense*.  Steinars may have benefited from Tripscout's promotion of her content by gaining views and followers.  But Tripscout does not explain why this boost to Steinars's popularity came at its detriment.  To the contrary, if Tripscout is correct that its posts brought more attention to Steinars, that would suggest those posts were popular, which also would have benefited Tripscout and its clients.

      Tripscout locates the "injustice" in this lawsuit—but this suit has nothing to do with Steinars's increased social-media following and related rise in income.  Steinars's decision to sue Tripscout for copyright infringement *after* her supposed enrichment cannot retroactively render that gain unjust for the purposes of restitution liability.  Put differently, if Steinars prevails on her infringement claims, then Tripscout necessarily used her content without permission.  So, it would not be unjust to allow Steinars to recover damages, in addition to whatever benefit she

11

may have reaped from Tripscout's improper use of her photos and videos.  And if Steinars's infringement claim fails because Tripscout had the right to use her content, then she will not be enriched through her lawsuit at all.  Her only gain would be the mutually beneficial publicity from the parties' marketing arrangement, for which Tripscout paid nothing.  There would be no injustice in allowing Steinars to share in that benefit.

This case is therefore distinguishable from other cases applying D.C. law where plaintiffs have been allowed to proceed on unjust enrichment claims.  In APA Assessment Fee Litigation, for example, the D.C. Circuit reversed the dismissal of an unjust enrichment claim brought by members who paid their organization an optional fee under the mistaken belief the fee was mandatory.  766 F.3d at 331–32.  There, the organization gained at the cost of its members:  It received the literal money its members paid.  Likewise, in Peart v. District of Columbia Housing Authority, 972 A.2d 810 (D.C. 2009), the D.C. Court of Appeals concluded that a plaintiff could sue the D.C. Housing Authority ("DCHA") for unjust enrichment based on litigation costs she incurred in a successful rent abatement lawsuit after the DCHA intervened and claimed the proceeds.  Id. at 814.  There, too, the defendant's gain (the proceeds from the litigation) came at the plaintiff's cost (the money, time, and effort she invested to litigate the case).

But, here, Tripscout has not described any causal relationship between Steinars's benefit and its own expense.  As a result, even assuming all the facts in Tripscout's favor, it has not pled unjust enrichment because there was no injustice in Steinars gaining followers from Tripscout's promotion of her content.

D.  Leave to Amend

In its opposition brief, Tripscout requests leave to amend its counterclaims in the event the Court sides with Steinars on the motion to dismiss.  Opp. at 20–21.  While "Federal Rule of

Civil Procedure 15(a) provides that a district court 'should freely give leave [to amend] when justice so requires,' . . . 'a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a).'" Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012) (first alteration in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006)); see also Strum v. Mardam-Bey, No. 24-cv-401 (TJK), 2025 WL 405120, at *11 (D.D.C. Feb. 4, 2025) ("'[A]n opposition brief' is not 'the proper place to request leave to amend a complaint.'" (citation omitted)). Moreover, under D.C. District Court Local Civil Rule 15.1, "[a] motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended." But, here, as in Rollins and Strum, Tripscout's request did not "include a proposed amended complaint." Rollins, 703 F.3d at 224–25; Strum, 2025 WL 405120, at *11.

This "non-compliance is more than a mere technical error." Strum, 2025 WL 405120, at *11. "Instead, the lack of a separate motion and proposed amended pleading 'make[s] it impossible for the Court (or the [Defendant]) to evaluate the merits of [Tripscout's] request for leave to amend.'" Id. (first and second alterations in original) (quoting Johnson v. District of Columbia, 49 F. Supp. 3d 115, 122 (D.D.C. 2014)). Without a proposed amended pleading, the Court has no way of knowing whether Tripscout could possibly "plead sufficient facts to state a plausible claim for relief." Rollins, 703 F.3d at 224.

Accordingly, the Court will deny Tripscout leave to amend. See id. (affirming denial of leave to amend when plaintiff "requested leave to amend as an alternative argument in her opposition to . . . [the defendants'] motion to dismiss" and did not attach proposed amended

13

complaint); Strum, 2025 WL 405120, at *11 (denying "opposition-brief request for leave to amend" on same basis).

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [39] Steinars's Motion to Dismiss Tripscout's Counterclaims is **GRANTED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 13, 2025