UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASA STEINARSDOTTIR a/k/a**<br>**ASA STEINARS**,<br><br>Plaintiff,<br><br>v.<br><br>**TRIPSCOUT, INC.**,<br><br>Defendant. | Case No. 23-cv-1528 (CRC)<br><br>**UNDER SEAL** |

<u>MEMORANDUM OPINION AND ORDER</u>

**I.    Background**

The Court has previously detailed the factual and procedural background of this dispute.

<u>See</u> ECF 58 ("Mem Op. & Order Dismissing Counterclaims") at 2–4.  In brief, Plaintiff Asa

Steinarsdottir ("Steinars") sued Defendant Tripscout, Inc. ("Tripscout"), for direct copyright

infringement based on allegations that Tripscout reposted and shared her social media content

without her permission.  <u>See</u> ECF 26-1 ("Third Am. Compl.").  Tripscout answered and asserted

affirmative defenses of failure to state a claim, laches, equitable estoppel, statute of limitations,

de minimis infringement, fair use, license, unclean hands, copyright misuse, acquiescence, lack

of infringement, and abandonment.  <u>See</u> ECF 38 at 32–35.  It also advanced counterclaims of its

own, <u>see</u> <u>id.</u> at 36–47, which the Court dismissed for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6), <u>see</u> Mem. Op. & Order Dismissing Counterclaims at 1.

The parties have engaged in a period of protracted and at times contentious discovery,

which has spawned four discovery disputes and three hearings.  Now before the Court are

dueling motions for spoliation sanctions.  <u>See</u> ECF 61-2 ("Steinars Mot."); ECF 70 ("Tripscout

Mot.").  Each party alleges that the other has failed to preserve or actively destroyed

electronically stored information ("ESI") that should have been kept for this litigation. Having reviewed their briefing and the record, the Court concludes that both parties spoliated potentially relevant evidence. Accordingly, it will grant both their motions in part.

## II.  Legal Standards

Federal Rule of Civil Procedure 37(e) governs the award of sanctions for the failure to preserve ESI.[1]  It establishes two preconditions for imposing sanctions:  First, "electronically stored information that should have been preserved in the anticipation or conduct of litigation [was] lost because a party failed to take reasonable steps to preserve it," and, second, that information "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e); see also Freeman v. Giuliani, 691 F. Supp. 3d 32, 54 (D.D.C. 2023) (quoting Skanska USA Civ. Se. Inc. v. Bagelheads, Inc., 75 F.4th 1290, 1311 (11th Cir. 2023)).

If those preconditions are satisfied, "Rule 37(e) creates a two-tiered sanctions regime— with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2)." Skanska USA Civ. Se. Inc., 75 F.4th at 1311.  Under Rule 37(e)(1), if the Court finds "prejudice to another party from loss of the information," it "may order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  "Rule 37(e)(1) 'does not place a burden of proving or disproving prejudice on one party or the other' and the 'rule leaves judges with discretion to determine how best to assess prejudice in particular cases.'"  Kalejaiye v. Quality

---

[1] Steinars relies on the standard for an adverse inference instruction from "federal and District of Columbia case law," Mazloum v. D.C. Metro. Police Dep't, 530 F. Supp. 2d 282, 291 (D.D.C. 2008), rather than the Federal Rule of Civil Procedure that governs preservation of ESI. See Steinars Mot. at 6.  But because the subject of her motion is ESI, the Court will apply Federal Rule of Civil Procedure 37(e).  See Fed. R. Civ. P. 37 note to 2015 amendment ("Rule 37(e) . . . authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures.  It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used.").

Investigations, Inc., No. CV 19-02647 (RC), 2024 WL 1213322, at *2 (D.D.C. Mar. 21, 2024) (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment).

Under Rule 37(e)(2), if the Court finds "that the party acted with the intent to deprive another party of the information's use in the litigation," the Court may "presume that the lost information was unfavorable to the party;" "instruct the jury that it may or must presume the information was unfavorable to the party;" or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

### III. Analysis

#### A. Steinars's Motion for Sanctions

Steinars moves for spoliation sanctions based on her allegation that Tripscout "destroyed all of the relevant information" regarding 52 of the 53 alleged infringements underlying her complaint—which consist of Tripscout's reposts of her posts on Instagram and TikTok—by deleting them from its social media accounts without creating records of the actual posts or any associated data about user engagement.[2]  See Steinars Mot. at 1.[3]  Tripscout concedes that it

---

[2] As the Court understands it, the data associated with social media posts can encompass public information, such as the number of likes and comments on a post at the time it was deleted, as well as information available only to the poster, such as "Instagram Insights." Instagram Insights is a feature that allows Instagram Business or Creator Accounts to track metrics for each of their posts, including the numbers of views and demographic information about the audience reached.  See Understanding Instagram Insights, Creators, https://creators.instagram.com/grow/insights?locale=en_US (last visited July 10, 2025). Instagram bills Insights as a tool for "figur[ing] out what type of content you should share more of" so as to "[b]reak down your reach" and "build up your audience."  Id.  Similar insights are provided by Tik Tok, where some of the alleged infringements were also posted.  See Tik Tok Insights, Tik Tok for Business, https://ads.tiktok.com/business/en/insights (last visited July 10, 2025).

[3] Steinars also hypothesizes that Tripscout destroyed evidence of additional infringements she never discovered based on an exchange between Tripscout's CEO and an independent contractor where, in instructing the contractor to delete Steinars's content, the CEO estimated that there were about "100" such posts.  See Steinars Mot. at 2 (quoting ECF 61-3 at 00900).

deleted many of these posts from its social media accounts but disputes the legal relevance of this conduct.  <u>See</u> Tripscout Opp'n at 9.

The Court concludes that Tripscout's deletion of some of these posts and their related analytical data was unreasonable in light of Tripscout's obligation to preserve evidence beginning in March 2021, and Steinars was prejudiced as a result of the loss of this data.  The Court does not, however, find that Tripscout acted with intent to deprive Steinars of this information.  Therefore, it will sanction Tripscout under Rule 37(e)(1) as opposed to Rule 37(e)(2).

### 1. *Tripscout should have anticipated litigation in March 2021.*

In March 2021, Steinars emailed Tripscout warning that it had "infringe[d]" her copyright.  ECF 26-1, Ex. 4, at 123 (page numbers designated by CM/ECF).  She offered to "settle" without involving her law firm if Tripscout would agree to pay for the works it had used. <u>Id.</u>  In response, Tripscout claimed to have "immediately removed any content that included [Steinars]."[4]  <u>Id.</u> at 124.  But it maintains it did so properly because, at that point, it was not reasonably anticipating litigation.

_____

But such speculation is insufficient to support an award of discovery sanctions, particularly given Tripscout's plausible explanation that the CEO provided the contractors with the rounded-up estimate of one-hundred posts to "set the urgency and high bar" for the contractors to find and remove the posts.  <u>See</u> ECF 64-2 ("Tripscout Opp'n") at 12.

[4] The parties dispute when Tripscout actually removed the posts that predated the lawsuit: Tripscout claims it deleted most of them in March 2021 after receiving Steinars's email, <u>see</u> Tripscout Opp'n at 5, while Steinars alleges that Tripscout waited until after the lawsuit was filed in 2023 to remove them, <u>see</u> ECF 66-2 ("Steinars Reply") at 2.

The Court need not definitively resolve this factual dispute because it concludes that Tripscout's obligation dated to the email.  It notes, however, that the record does not support Steinars's version of the facts.  She contends that Tripscout must have deleted these posts after the complaint was filed because she has screenshots of the alleged infringements that postdate the filing of the lawsuit.  <u>See</u> Steinars Reply at 2.  But, as Tripscout highlights, some of the screenshots Steinars submits are screenshots of earlier screenshots—not screenshots of the

The filing of a lawsuit obviously triggers a duty to preserve evidence, but that obligation may arise earlier if a party has notice that future litigation is likely.  See Gerlich v. U.S. Dep't of Justice, 711 F.3d 161, 170–71 (D.C. Cir. 2013).  Here, Tripscout had reasonable notice litigation was anticipated as soon as it received Steinars's email, which referred to "copyright infringement" and Steinars's "claim" for compensation.  ECF 26-1, Ex. 4, at 123.  Steinars made clear that she was taking steps to prepare for litigation:  Her law firm was "properly document[ing] all the infringements" and submitting the work to the U.S. copyright office for registration, a prerequisite to suit.  Id.  Based on these obvious references to an impending lawsuit, Tripscout should have known litigation was likely in March 2021, which in turn should have triggered its preservation duties.[5]

> ### 2.  *Tripscout should have preserved the alleged infringements and associated data.*

 "A litigant is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."  Mahaffey v. Marriott Int'l, Inc., 898 F. Supp. 2d 54, 60 (D.D.C. 2012) (citation

---

original posts.  See ECF 69-2 ("Surreply") at 2–5.  So, for example, Steinars points to the March 2023 screenshot date for Infringement #1.  See Steinars Reply at 2.  Tripscout, however, has shown that March 2023 is when the screenshot of the screenshot was taken, while the original screenshot was actually taken in February 2021.  See Surreply at 2–5.  The upshot: Tripscout plausibly could have deleted Infringement #1 *before* the complaint was filed.

[5] This conclusion is bolstered by a subsequent email in which Tripscout's CEO effectively rejects Steinars's settlement offer, stating "you are not entitled to any financial compensation from us and it's a position that we and our legal counsel will stand firm on."  ECF 26-1, Ex. 4, at 130.  Having rebutted Steinars's overture, it should have been apparent that the "claim [for] compensation" she promised might well materialize.  Id. at 123.

modified). The next issue, then, is whether Tripscout should have known the alleged infringing posts and associated data could be relevant to the litigation.

The answer is an easy yes. Any alleged infringement would obviously be relevant to a potential copyright claim arising from it. As would the associated data, because it could be relevant to calculating damages for a copyright claim. The Copyright Act provides that a copyright infringer is liable for "actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a)(1).[6] Actual damages, which aim to compensate a copyright owner for the theft of her work, often take the form of "the fair market value of a license fee for the use the infringer made." On Davis v. The Gap, Inc., 246 F.3d 152, 161 (2d. Cir 2001). But a copyright owner is also entitled to "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "In this way, the Copyright Act aims to both compensate for the injury resulting from infringement and to strip the infringer of the profits generated from infringement, in order to make clear that there is no gain to be made from taking someone else's intellectual property without their consent." Lerch Bates, Inc. v. Michael Blades & Assocs., Ltd., No. CV 20-2223 (BAH), 2023 WL 6276643, at *13 (D.D.C. Sept. 26, 2023) (citation modified) (quoting Dash v. Mayweather, 731 F.3d 303, 311–12 (4th Cir. 2013)).

"In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17

---

[6] A copyright owner may alternatively recover statutory damages. 17 U.S.C. § 504(a)(2). Steinars's argument that Tripscout's deletion of the posts undermined her ability to calculate statutory damages is based on her theory that Tripscout deleted infringements she never discovered, see Steinars Mot. at 13–14, which the Court has rejected.

U.S.C. § 504(b).  But "to survive summary judgment on a demand for indirect profits pursuant to § 504(b) . . . a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement."  Lerch Bates, 2023 WL 6276643, at *13 (quoting Mackie v. Rieser, 296 F.3d 909, 915–16 (9th Cir. 2002)).  The Court is persuaded that metrics such as the number of views, likes, and shares of the allegedly infringing posts would shed light on audience engagement with Tripscout's posts of Steinars's content, which could help her prove damages.  For example, Steinars might attempt to show that the popularity of her content drove Tripscout's revenue.

Tripscout retorts that this data is irrelevant because it did not generate revenue from Steinars's content.  See Tripscout Opp'n at 13–15.  But arriving at such a holding would require the Court to make a factual determination about Tripscout's revenues.  That issue might be appropriate for summary judgment, but it is not properly before this Court for purposes of resolving this motion.  Instead, the Court will assume a world in which Tripscout was earning revenue from the posts.  In this world, the analytical data associated with the posts could help Steinars prove that they contributed to Tripscout's profits.  Therefore, the Court concludes that, when Tripscout deleted some of the alleged infringements, it breached its obligation to preserve them and their associated data.

Tripscout's next response is that it deleted the posts to meet Steinars's demands that it stop using her works.  But Tripscout has not explained why it deleted, rather than archived, most of the posts.[7]  When a user deletes a post, she also deletes all data associated with that post, such as the number of likes, comments, and views.[8]  When a user archives a post, however, all that

_____

[7] It archived some.  See Tripscout Opp'n at 9.

[8] See Jenn Herman, Instagram Archive Posts: Marketing Strategy (June 2, 2021), https://www.socialmediaexaminer.com/instagram-archive-posts-marketing-

data can be restored so long as the account was a business account at the time of posting.[9]  While the Court appreciates that Tripscout may have deleted the posts in a hasty attempt to address Steinars's objections (and will take these efforts into account in assessing its culpability), the record compels the conclusion that Tripscout was negligent in deleting most of these posts and associated data, particularly given that it "consult[ed] with [its] legal counsel and their copyright specialists" in response to its exchange with Steinars.  ECF 26-1 at 130.  This conclusion does not apply to the archived posts, which Tripscout has now produced.  See Tripscout Opp'n at 4.

### 3. Records of the infringements are otherwise recoverable, but the data associated with the deleted posts is not.

Tripscout's negligence in adhering to its preservation obligations, however, only gets Steinars so far.  She must also prove that the ESI Tripscout failed to preserve was, in fact, lost. Here, part of her motion fails because "records" of the deleted posts themselves are replaceable: She has screenshots of the alleged infringements, which are the basis of her complaint.  See ECF 26-1 at 24–122.  Still, the analytical data associated with the deleted posts was lost as a result of

---

strategy/#:~:text=An%20archived%20post%20still%20contributes,cleaning%20up%20your%20 Instagram%20profile; What Happens to Content You've Deleted From Your Instagram Account, Help Center, https://help.instagram.com/711062676142607/?helpref=related_articles (last visited July 10, 2025); Suparise, The Instagram Post Predicament: How, When, and Why to Delete Posts (Nov. 21, 2023), https://suparise.com/blog/the-instagram-post-predicament-how-when-and-why-to-delete-posts/#:~:text=It's%20important%20to%20note%20that,aligned%20with%20your%20current%2 0story.

A user can "restore" a deleted post within thirty days of deletion, but neither party has argued that any of the deleted posts fall within this window.  See Restore Content You've Deleted From Your Instagram Account, Help Center, https://help.instagram.com/86627096416617/?cms_platform=iphone-app&helpref=platform_switcher (last visited July 10, 2025).

[9] See Jenn Herman, Instagram Archive Posts, supra n.8; Suparise, The Instagram Post Predicament, supra n.8.

Tripscout's actions.  Tripscout does not claim that this information is otherwise recoverable or available.  Therefore, Steinars's motion may proceed as to that data.

### 4. Sanctions

Having concluded that Tripscout failed to fulfill its obligation to preserve the analytical data associated with the alleged infringements, which was lost as a result, the Court must now turn to determining the appropriate sanction.  "'Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations' and to determine what sanctions to impose."  Go Pro Constr., LLC v. Valsts Nekustamie Ipasumi, No. 1:22-CV-1643-RCL, 2024 WL 1759103, at \*4 (D.D.C. Apr. 24, 2024) (quoting DL v. District of Columbia, 256 F.R.D. 239, 242 (D.D.C. 2009)); see also Bonds v. District of Columbia, 93 F.3d 801, 807 (D.C. Cir. 1996)).

The Court will award sanctions under Rule 37(e)(1) because it finds Steinars has been prejudiced from the loss of information; it will not, however, resort to the harsher sanctions afforded under Rule 37(e)(2) because it concludes Tripscout did not act with intent to deprive Steinars of this information.

### a. Prejudice

For similar reasons that the Court found relevant the analytical data associated with the alleged infringements, it concludes Steinars was prejudiced from its loss, which undermines her ability to prove her damages, and specifically Tripscout's profits from any alleged infringement. Accordingly, should this case proceed to trial, Steinars will be permitted to present evidence to the jury concerning the loss of this engagement data, and the jury will be permitted to consider that evidence in evaluating credibility and rendering its verdict.  "Such a sanction (as distinguished from a mandatory or permissive adverse inference instruction) is permitted under

Rule 37(e)(1) without any predicate finding of intent to deprive." <u>Karsch v. Blink Health Ltd.</u>, No. 17CV3880VMBCM, 2019 WL 2708125, at *20 (S.D.N.Y. June 20, 2019); <u>see also</u> Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (explaining that "allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision . . . would be available under subdivision (e)(1) if no greater than necessary to cure prejudice"). This type of argument to the jury would be appropriate because it is "less severe than an adverse inference instruction" but "will help 'rectify the evidentiary imbalance' that plaintiff and his counsel created by spoliating relevant ESI." <u>Karsch</u>, 2019 WL 2708125, at *27 (quoting <u>Linde v. Arab Bank, PLC</u>, 706 F.3d 92, 102 (2d Cir. 2013)).

### b. <u>Intent</u>

The Court will not, however, award any harsher sanctions because it sees no evidence that Tripscout acted with an intent to deprive Steinars of the relevant data. Instead, the Court understands Tripscout's deletion of the alleged infringements as part of a scramble to comply with Steinars's request that it no longer use her work. While archiving all the posts would have been the more reasonable course, the Court does not find that Tripscout's choice to delete many of them indicative of bad faith. Indeed, the Court finds the fact that Tripscout deleted some posts but archived others telling of a lack of coordination or intent. Therefore, the Court finds more modest sanctions under Rule 37(e)(1) better suited to addressing this violation.

### B.  <u>Tripscout's Motion for Sanctions</u>

What's sauce for the goose, Tripscout says, is sauce for the gander.

Tripscout moves for sanctions based on two categories of allegedly lost ESI: (1) the content of Steinars's iPhones and cloud-based iMessage account from before June 2, 2023, three

days after she filed this lawsuit; and (2) certain positive social media interactions between

Steinars and accounts allegedly affiliated with Tripscout.  <u>See</u> ECF 71-1 ("Tripscout Motion") at

1. Specifically, Steinars appears to have "lost" all her iPhone and iMessage data three days after

the lawsuit was commenced.  <u>See</u> ECF 71-2 ("Steinars's Responses to Tripscout's Amended

Requests for Production") at 3 (page numbers designated by CM/ECF) (showing date range for

information stored on iPhones and iMessage as 6/2/2023 to present).  And Tripscout has

submitted evidence that Steinars deleted and removed some of the social media interactions after

the lawsuit commenced.[10]  <u>See</u> Tripscout Mot. at 11.

        The Court will grant Tripscout's motion in part and sanction Steinars under Rule 37(e)(1)

based on her failure to preserve her iPhone and iMessage data, which was plausibly relevant to

Tripscout's statute of limitations defense.

### 1.  *Steinars should have anticipated litigation in March 2021.*

        Steinars represents that litigation was reasonably anticipated in March 2021, when she

sent Tripscout the email warning that it did not have her permission to use her works.  As the

plaintiff, Steinars is the party best positioned to know when she planned to file suit.

---

[10] Like Steinars, Tripscout also makes an argument based on hypothetical data:  It posits that, given that Steinars appears to have removed or failed to produce interactions, she likely also deleted other interactions.  Tripscout Mot. at 14–15.  As support, it submits declarations from its CEO, Director of Digital Marketing, and an independent contractor that "there were numerous interactions between Plaintiff and Tripscout's social media accounts that evidenced her consent to Tripscout's featuring of Plaintiff's works."  <u>Id.</u> at 14; ECF 70-1 (Waliszewski Declaration); ECF 70-2 (Darwish Declaration); ECF 70-3 (Ashraf Declaration).  But the Court finds these declarations too vague.  For example, while Mr. Darwish, who was formerly a Tripscout independent contractor, described Steinars's practice of positively engaging when it shared her content, he did not provide examples of specific posts she liked or approved that are not otherwise in the record.  <u>See</u> Darwish Declaration ¶ 6.  Therefore, this category of potential ESI is too speculative to support any potential discovery sanction.

Accordingly, the Court takes her at her word that she anticipated litigation in March 2021, and thus her own discovery obligations began then.

> 2. *Steinars should have preserved her iPhone and iMessage data and social media interactions with Tripscout.*

Next, the Court turns to the relevance of the two types of allegedly lost ESI: the iPhone and iMessage data and the social media interactions.

First, the iPhone and iMessage data. Without this information, its relevance is difficult to assess. But Tripscout should not bear the burden of this difficulty. See Beck v. Test Masters Educ. Servs., Inc., No. CV 04-1391 (JDB), 2012 WL 10817176, at *6 (D.D.C. Sept. 25, 2012), modified on reconsideration, 289 F.R.D. 374 (D.D.C. 2013) (collecting cases) ("As several courts have pointed out. however, requiring the movant to prove with particularity the contents of a spoliated email can be unfair."); Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) ("[B]ecause 'the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'" (second and third alterations in original) (quoting Alexander v. Nat'l Farmers Org., 687 F.2d 1173, 1205 (8th Cir.1982))).

Instead, it is enough for Tripscout to come forward with a plausible explanation for what the deleted information might have been. Cf. Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1328 (Fed. Cir. 2011) (holding that it is enough for plaintiff to "come forward with plausible, concrete *suggestions* as to what [the destroyed] evidence *might have been*" to show prejudice (alteration in original) (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 81 (3d Cir. 1994))). It has done so here. Tripscout posits it is likely that Steinars exchanged some text messages about the alleged infringements during the time when she purportedly discovered them. See Tripscout Mot. at 32–33. Accordingly, it contends, Steinars's text messages from this

period could be relevant to Tripscout's defense that some of Steinars's claims are time barred by the statute of limitations. Id.

The Copyright Act provides for a three-year statute of limitation on copyright claims. 17 U.S.C. § 507(b). While the D.C. Circuit has not weighed in on the circuit split as to when a copyright claim accrues, other courts in this district have employed the discovery rule providing that a copyright claim accrues when the plaintiff discovers the infringement. See Oppenheimer v. WL Mag. Grp., LLC, No. CV 20-1451 (ABJ), 2021 WL 6849089, at *3 (D.D.C. Mar. 4, 2021) (citing Tech 7 Sys., Inc. v. Vacation Acquisition, Inc., 594 F. Supp. 2d 76, 83 (D.D.C. 2009); Williams v. Curington, 662 F. Supp. 2d 33, 38 (D.D.C. 2009)). Therefore, Steinars's text messages could plausibly impact Tripscout's statute of limitations defense by showing *when* she became aware of the alleged infringements—for example, if she had sent messages when she found out about Tripscout sharing her content that predated the date when she has represented in this lawsuit that she became aware of the alleged infringement. Steinars thus reasonably should have known that her iPhones and iMessage account might contain relevant data.

The social media interactions present a slightly closer question because, as Steinars points out, some relate to uses of her works for which she has not claimed copyright infringement. See ECF 84 ("Steinars Opp'n") at 4 n.1. The Court, however, concludes Steinars still had reason to know they could be relevant. Even the interactions that do not relate to an alleged infringement could be used to show that Steinars had, at least at some point, consented to Tripscout reposting some of her works, evidence that could go to the company's equitable estoppel defense. See Spanski Enters., Inc. v. Telewizja Polska S.A., 222 F. Supp. 3d 95, 112 (D.D.C. 2016) ("To establish equitable estoppel as a defense to a copyright infringement action, the defendant must prove four conjunctive elements: '(1) the plaintiff must know the facts of the

defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury.'" (citing Tech 7 Sys., Inc., 594 F. Supp. 2d at 86)).

Accordingly, Steinars's pre-June 2, 2023, iPhone and iMessage data and the identified interactions with Tripscout were ESI that she had a duty to preserve.

### 3. Steinars did not take reasonable steps to preserve her ESI.

"With respect to preserving ESI on phones or other electronic devices, courts have normally held that litigants must prevent destruction of ESI on such devices by backing up the data to that device's cloud network." Freeman, 691 F. Supp. at 55 (collecting cases). In Freeman, another court in this district applied this principle to conclude that "turning off autodelete at some unidentified date on an unenumerated number of [defendant's] Devices and Communications Accounts" was insufficient to comply with the defendant's Rule 37(e) obligations. Id. at 54. Here, there is no evidence that Steinars even took such a step (turning off autodelete), let alone any more active efforts to prevent destruction, such as backing up her iMessage communications to her iCloud account or downloading the contents of her iPhones or iMessage account to an external storage device. She has not "provide[d] any details . . . as to what precise steps [s]he took and when" to preserve ESI on these devices and accounts. Id. at 55. To the contrary, Steinars has offered no explanation whatsoever for the loss of this information. Cf. Jones v. Riot Hosp. Grp. LLC, 95 F.4th 730, 735–36 (9th Cir. 2024) (plaintiff's inability to explain why only some messages had been deleted supported the court's conclusion that she intentionally deleted them). She never responded to Tripscout's letter inquiring about it, and her opposition largely ignores the point.

14

As for the social media interactions, it appears Steinars actively deleted some.  Tripscout submits screenshots of interactions that no longer exist as they appear in the screenshot.  For example, after this lawsuit began, Tripscout took a screenshot of an Instagram direct message conversation between Steinars and an Instagram account that it alleges belongs to one of its contractors.  Tripscout Mot. at 11.  The screenshot of the conversation shows that Steinars sent the account one of her posts, to which the account owner responded "Aw love this! Will deff share <3[.]"  Id.  Steinars "heart reacted" to that message.  Id.  But a screenshot of this conversation from April 5, 2025, no longer shows the post Steinars sent or her heart react:



Id.  Presumably only Steinars or someone with access to her Instagram account could have altered these messages.  Therefore, the Court concludes she deleted them.  Likewise, the Court

finds compelling Tripscout's argument that, assuming Steinars complied with her discovery obligations, she should have produced reciprocal versions of the exchanges it produced.  See id. at 28.  For example, Tripscout produced a message from Steinars to an alleged Tripscout contractor saying "Hey yeah go ahead," in response to an inquiry about whether the account could share one of her posts.  See id.  But Steinars never produced this message.  Id.  In the absence of such production, the Court is left to conclude either (1) that Steinars failed to fulfill her production obligations or (2) that Steinars could not have produced this message (and other similar exchanges) because she deleted them.  Deleting evidence is an obvious breach of a preservation obligation.

> ### 4.   *Steinars's iPhone and iMessage data are now lost, though her social media interactions remain retrievable.*

Steinars's iPhone and iMessage data appears irretrievable.  There is nothing in the record to suggest it could be recovered through additional discovery.  And while Steinars claims there is no reason to believe her iPhones or iMessage account would contain communications not found on her other social media accounts, see Steinars Opp'n at 1, the Court disagrees.  Discovery of messages from one platform does not render discovery from another platform unnecessary, as the content, context, and audience of communications may differ materially across platforms.

The social media interactions are replaceable, however, because, as Tripscout's own discovery motion makes evident, it has records of them.  Tripscout itself acknowledges that it has captured some of Steinars's engagement with it or its accounts as existing at the beginning of the lawsuit.

Therefore, the motion proceeds only as to Steinars's iPhone and iMessage data.

5. *Sanctions*

Because Steinars failed to fulfill her obligation to preserve her iPhone and iMessage data, the Court will sanction her. The Court will award sanctions under Rule 37(e)(1) because it finds Tripscout has been prejudiced from the loss of information; it will not, however, sanction Steinars under Rule 37(e)(2) because the Court cannot conclude on the record before it that she acted with intent to deprive Tripscout of the evidence's use in the litigation.

a. <u>Prejudice</u>

"Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Accordingly, "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases." <u>Id.</u> "Once a finding of prejudice is made, the court is authorized to employ measures 'no greater than necessary to cure the prejudice.'" <u>Id.</u>

Placing the burden of proving prejudice on Tripscout here would be unfair. <u>See</u> <u>Karsch</u>, 2019 WL 2708125, at *20 ("[D]etermining the content of the lost [messages] is 'a difficult task,' and the difficulty has been caused entirely by plaintiff." (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment)). And, for the same reasons that the messages could be relevant, they could be "[]important." Fed. R. Civ. P. 37(e) advisory committee's note 2015 amendment. Tripscout's statute of limitations defense depends on when Steinars knew about the infringing activity. This case is thus similar to <u>Freeman</u>, where the plaintiffs asserted defamation and intentional infliction of emotional distress claims that required evidence that the defendant acted with actual malice and intentionally or recklessly, respectively. 691 F. Supp. 3d at 58–59. The court found the plaintiffs were "severely hampered" by the loss of defendant's messages and

email communications because those communications could have contained "access to circumstantial evidence" of the defendant's state of mind. Id. at 59. Likewise here, without access to Steinars's messages from the period in which she allegedly discovered it, Tripscout is constrained in its ability to refute Steinars's representations about when she discovered the purported infringements.

Tripscout has also come forward with some circumstantial evidence of potential inconsistencies in Steinars's representations about when she discovered the alleged infringements. For example, Steinars claims she did not discover Infringement No. 1 until March 21, 2021, but her own discovery responses indicate that she screenshotted Infringement No. 1 four days after it was posted on February 14, 2021. See supra n.4. Given these discrepancies, the Court finds particularly salient any communications related to this issue.

Therefore, first, should this case proceed to trial, Tripscout will be permitted to present evidence to the jury concerning the loss of Steinars's iPhone and iMessaga data, and the jury will be permitted to consider that evidence in evaluating credibility and rendering its verdict. See Karsch, 2019 WL 2708125, at *27–28; Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Second, the Court will order Steinars to produce the original copies of the screenshots shown at ECF 26-1, Exhibit 3 (rather than the screenshots of screenshots she submitted), so that Tripscout may determine when she first discovered these infringements.

b. Intent

The Court will not grant Tripscout's defense for more severe sanctions, including dismissal of this action, because there is insufficient evidence that Steinars lost the ESI with the intent to deprive Tripscout of its use.

Tripscout accurately characterizes the timing of the data loss as suspicious.  Tripscout Mot. at 26–27.  But while proximity between the loss of information and the filing of a lawsuit may be suggestive of bad faith, Tripscout has not pointed to any cases where it was dispositive. The principal case on which it relies, E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc., 803 F. Supp. 2d 469 (E.D. Va. 2011), involved more extensive allegations of bad faith.  See id. at 501–502 (finding that after defendants learned of the lawsuit, "discussions ensued respecting the possible deletion of relevant files and email items," and certain documents were marked with directions "such as 'Delete,' 'Need to Delete,' and 'Get Rid of'").  Therefore, with only limited circumstantial evidence that Steinars intentionally deleted this ESI, the Court declines to exercise its discretion to sanction Steinars under Rule 37(e)(2).

## IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [ECF 60] Steinars's Motion for Sanctions is GRANTED in part and DENIED in part.  It is further

**ORDERED** that [ECF 70] Tripscout's Motion for Sanctions is GRANTED in part and DENIED in part.  It is further

**ORDERED** that [ECF 68] Tripscout's Motion to File Surreply is GRANTED.  It is further

**ORDERED** that Steinars shall produce the original copies of the screenshots shown at ECF 26-1, Exhibit 3 (rather than the screenshots of screenshots she submitted), by July 18, 2025. It is further

**ORDERED** that the parties shall, by July 25, 2025, submit as a notice as to whether any portion of this memorandum opinion, which has been filed under seal because it references certain sections of the parties' sealed filings, shall remain sealed.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  July 11, 2025